## YARBOROUGH *vs.* THE STATE.

[INDICTMENT FOR LARCENY OF HORSE.]

1. *Proof of criminal acts not charged, as relevant to question of identity, intent, or guilty knowledge.*—Where the question of identity or intent is involved, or where it is necessary to show a guilty knowledge on the part of the prisoner, evidence may be received of other criminal acts than those charged in the indictment.

2. *Competency of convicted felon, who has been pardoned, as witness.*—A pardon restores the competency of a felon, who has been rendered incompetent as a witness by a conviction of an infamous crime, although it is not affirmatively shown "that the warrant of pardon restored him to the rights of citizenship."

3. *Assessing value of stolen property.*—Under an indictment for the larceny of a horse, (Code, § § 3180, 3175,) it is not error to refuse to instruct the jury, at the instance of the defendant, "that they must assess the value of the property according to its value in gold."

FROM the Circuit Court of Montgomery.

Tried before the Hon. GEO. GOLDTHWAITE.

THE indictment in this case, which was found at the April term, 1866, of the circuit court of Lowndes, contained two counts; the first count charging the defendants, James Yarborough, George Heller, *alias* George Hilliard, and Welcome Lovelace, with the larceny of a horse, the personal property of Robert D. Ware; and the second charging them with the larceny of a buggy, of the value of one hundred dollars, the personal property of said Ware. The venue was changed, in the case of the defendant Yarborough, to Montgomery county; and he was there tried, at the July term, 1867, on issue joined on the plea of not guilty. The following bill of exceptions was reserved by him to the rulings of the court on the trial :

"The State introduced evidence tending to show that, on the night of the 14th January, 1866, a horse and buggy were stolen in the city of Montgomery, the horse being the property of Robert D. Ware, as alleged in the indictment ;

that subsequently, about the 17th, said horse and buggy were found in the possession of one W. Lovelace, George Heller, and the defendant, in Lowndes county, and afterwards in Pike county; and that they sold or swapped the horse, about the 19th of the same month, in Pike county. The proof showed that the buggy belonged to one T. B. Maddox; and thereupon a *nolle-prosequi* was entered as to the second count. The witnesses for the prosecution stated, on cross examination, that the defendant was a stranger to them, and passed by the name of Stewart; that he was in custody at Hayneville when they next saw him, and they recognized him as the same man; and they described his dress, and the manner in which he wore his hair and beard. To rebut this evidence, the defendant offered evidence tending to show that, at the time when the horse was said to have been in his possession in Lowndes and Pike, he himself was in the city of Montgomery; and that he did not wear his hair or beard, at or about that time, in the manner described by the witnesses. On this evidence, the State introduced as a witness, to prove his identity, one George Heller, who was one of the defendants mentioned in the indictment, and who, it was admitted, had been tried on the indictment, convicted, and sentenced to the penitentiary for a term of years, but had been pardoned by the governor; but it did not appear that he had been restored by the warrant of pardon to the rights of citizenship, or any other rights forfeited by his conviction. The defendant objected to the competency of this witness; but his objection was overruled by the court, and the witness was permitted to testify as to his identity; and he *again* excepted.

"After introducing evidence of the horse and buggy having been stolen, as above stated, the prosecuting attorney offered to prove that two mules, the property of T. H. Watts, were stolen at the same time in the city of Montgomery; and also proof tending to show that the mules so stolen were in the possession of said defendant, Lovelace, and Heller, at the same time they were in possession of the horse and buggy. The defendant objected, also, to this evidence; but his objection was overruled by the court,

and the evidence was permitted to go to the jury; and he again excepted.

" The only witness examined as to the value of the horse stated, on his direct examination, that he was worth about one hundred dollars; but, on cross examination, being asked what the horse was worth in gold coin, stated, that he was worth about sixty or seventy dollars in gold coin. On this evidence, the defendant asked the court to charge the jury, that in assessing the value of the property, they must assess it according to its value in gold coin. The court refused this charge, and the defendant excepted to its refusal."

The jury returned a verdict of guilty as charged in the indictment, and assessed the value of the horse at sixty-five dollars in gold, or one hundred dollars in currency; and the court thereupon sentenced the defendant to imprisonment in the penitentiary for the term of five years, and rendered a judgment against him, in favor of said Robert D. Ware, for the value of the horse as assessed by the jury.

J. FALKNER, for the prisoner.

JNO. W. A. SANFORD, Attorney-General, contra.

JUDGE, J.—On the trial below, the State introduced evidence tending to show, that the property mentioned in the indictment had been stolen in the city of Montgomery, on the night of the 14th of January, 1866; and that subsequently the property was in the possession of the prisoner, and two other persons, named respectively Lovelace and Heller, in the county of Lowndes; and that at a time still subsequent, it was in their possession in the county of Pike. The witnesses for the State stated, on cross examination, that when they saw the prisoner in the possession of the property as stated, he was a stranger to them, and passed by the name of Stewart; that the next time they saw him, he was in custody, and they recognized him as the same man they had previously seen with the property; and they described his dress, and the manner in which he wore his hair and beard, when they saw him in Lowndes and in Pike. The prisoner introduced evidence in rebuttal, tending to show that, at the time the property was said to

be in his possession in Lowndes and Pike, he was in the city of Montgomery; and that he did not wear his hair or beard, at or about that time, in the manner described by the witnesses.

This state of proof presented the material question of *identity* as to the prisoner. The record informs us that, after the introduction of the evidence above stated, the court permitted the State to introduce evidence, against the objection of the prisoner, "that two certain mules, the property of T. H. Watts, had been stolen at the same time in the city of Montgomery; and also proof tending to show that the mules so stolen were in the possession of said defendant, said Lovelace, and said Heller, at the same time they were in possession of said horse and buggy." Was this evidence properly admitted? It is stated by high authority, that "when the evidence is referrible to the point in issue, it will not be inadmissible, although it may incidentally apply to another person, or to another thing, not included in the transaction in question, and with regard to whom, or to which, it is inadmissible. Thus, although it is not material in general, and is therefore inadmissible, to inquire into any other stealing of goods than that specified in the indictment; yet, for the purpose of ascertaining the identity of the person, it is often important to show that other goods, which have beenupon an adjoining part of the premises, were stolen on the same night, and afterwards found in the possession of the prisoner.—1 Phill. Ev. 169, 7th ed. So, on an indictment for arson, evidence has been admitted to show that property, which had been taken out of the house at the time of the firing, was afterwards discovered in the prisoner's possession."—Roscoe's Cr. Ev. 82–83. The authorities also hold, that evidence of other transactions than the one in question may be received, where the question of *intent* is involved, or where it is necessary to show "*guilty knowledge*."—Roscoe's Cr. Ev. 82–96. See, also, *Tharp v. The State*, 15 Ala. 749. The evidence objected to by the prisoner, was clearly admissible for the purpose we have stated; and we cannot place the court in error, by making the intendment that it was admitted for any other than the legal purpose.

Yarborough v. The State.

2. George Heller was offered as a witness for the State, and permitted to testify as such, against the objection of the prisoner as to his competency.  The witness had been embraced in the indictment, as a co-defendant, and had been tried, convicted, and sentenced to imprisonment in the penitentiary for a term of years, and had been pardoned by the governor; "but," says the bill of exceptions, "it did not appear that he had been restored by the warrant of pardon, to the rights of citizenship, or any other rights forfeited by his conviction."  Section 2302 of the Code provides, among other things, that "no objection must be allowed to the competency of a witness, in any legal proceeding, whether examined orally or by deposition, because the witness has been rendered infamous by a conviction for any crime, except perjury or subornation of perjury."  Waiving the question as to whether that portion of the section of the Code above quoted was repealed by the act of the 14th of February, 1867, and waiving the further question, whether the crime of which the witness was convicted renders him, in the eye of the law, so infamous as that, in the language of Chief-Baron Gilbert, "the credit of his oath is overbalanced by the stain of his iniquity;" still the witness was competent by virtue of his pardon alone.  The legal effect of a full pardon is, to remove all disability arising from the conviction—is fully to rehabilitate the party—whether it be so expressed in the pardon or not.—1 Greenleaf's Ev. § 377 ; 1 Bish. Cr. Law, 762.  The court, therefore, did not err in ruling the witness to be competent.

3. Neither can we say there was error in the refusal of the court to charge the jury, "that in assessing the value of the property, they must assess it according to its value in gold."  The grade of the offense did not, in this case, depend upon the value of the property alleged to be stolen.  Revised Code, § 3706.

There is no error in the record, and the judgment is affirmed.