State v. Walker.

THE STATE v. CHARLES WALKER, Appellant.

**Division Two, March 6, 1906.**

1. **LARCENY: Sufficiency of Evidence.** Evidence examined and *held* sufficient to support the verdict finding defendant guilty of the larceny of a cow.

2. ———: **Evidence: Identification.** Evidence that two days prior to the day on which defendant sold the stolen cow to a commission company, he sold another cow to the same company, was admissible for the purpose of identifying defendant as the party who had in his possession the cow stolen from the prosecuting witness; and such evidence did not show another and separate crime, there being no evidence that the cow first sold was stolen.

3. ———: **Instruction: Recent Possession: Alibi.** Although an instruction, in a larceny case, on the presumption arising from the recent possession of stolen property, may not be comprehensive enough as not including the evidence as to alibi, yet if the defense of alibi is fully covered by another instruction, the error is not reversible. However, it would be preferable to make the instruction on recent possession broad enough to cover all matters which should be considered in rebuttal of the presumption arising from recent possession.

4. **REMARKS OF ATTORNEY: No Exception.** Alleged improper remarks of an attorney, in order to be reviewed, must be preserved in the bill of exceptions.

Appeal from Jackson Criminal Court.—*Hon. Jno. W. Wofford,* Judge.

AFFIRMED.

*Philip D. Clear* for appellant.

(1)   There ought to have been a verdict directed for defendant at the close of the case if only proper and legitimate evidence had been admitted.  (2)   The court committed reversible error in admitting, over the timely, proper and full specific objections of defendant, the evidence relating to a separate larceny of a cow on or prior to December 21, 1904, when it was sold at stock yards by a man by the name of Smith claimed by State to be defendant, and further committed reversible error in admitting, over timely and proper objection of defendant, the scale ticket evidencing the weight of the cow and the amount of money to be paid Smith on presentation to the proper party of that scale ticket, because said evidence all relates to a separate crime and transaction, from the one charged in the information. State v. Spray, 174 Mo. 569; State v. Goetz, 34 Mo. 85; State v. Harold, 38 Mo. 496; State v. Daubert, 42 Mo. 242; State v. Reavis, 71 Mo. 419; State v. Turner, 76 Mo. 350; State v. Tabor, 95 Mo. 590; State v. Reed, 85 Mo. 194; State v. Burlingame, 146 Mo. 207.

*Herbert S. Hadley,* Attorney-General, and *John Kennish,* Assistant Attorney-General, for the State.

(1)   The court did not err in overruling defendant's demurrer at the close of the evidence for the State. 2 Bish. New Crim. Proc., sec. 739; State v. Kelly, 74 Mo. 608; State v. Jennings, 81 Mo. 185; State v. Butterfield, 75 Mo. 297.  (2)   The court, in a separate instruction, declared the law on the defense of alibi in the form approved by this court.  State v. Adair, 160 Mo. 391. (3)   For the purpose of identification, it is permissible to prove even other crimes than the one on trial. Underhill on Crim. Ev., sec. 91; 1 Bishop's New Crim. Proc., 1129; 1 Wigmore on Ev., sec. 414, and foot note; State v. Bailey, 88 S. W. 733; Yarborough v. State, 41 Ala.

405; Peoples v. Taylor, 69 Pac. 292; State v. Folwell, 14 Kan. 105.

GANTT, J.—This prosecution was commenced by the prosecuting attorney of Jackson county filing an information in the criminal court of Jackson county, at the January term, 1905, wherein he charged that Charles Walker, alias E. Johnson, whose Christian name in full is unknown to said prosecuting attorney, late of the county aforesaid, on the 23rd day of December, 1904, one red milk cow of the goods and chattels of William A. Gosnell and James C. Gosnell, then and there being, did then and there unlawfully and feloniously steal, take and carry away, against the peace and dignity of the State.

The information was verified. The defendant was arrested and arraigned upon said charge and entered his plea of not guilty, and at the April term, 1905, of said court, was tried, convicted and his punishment assessed at four years imprisonment in the penitentiary. Motion for new trial was filed in due time, heard and overruled, exceptions saved and an appeal taken to this court.

The evidence on the part of the State tended to prove the following facts: James C. Gosnell, on the 22nd of December, 1904, resided at 35th and Agnes streets in Kansas City, Jackson county, Missouri. He had in his possession a milk cow, belonging to himself and his father, William A. Gosnell. This cow was kept in a barn yard on his premises, which yard was surrounded by a wire fence and two gates. About dark on the night of December 22, 1904, the cow was seen in the lot by James C. Gosnell and his employee, Thomas Jones. That latter fastened the gates, tying one, and the other was closed with a latch. The next morning the fence was broken and the cow gone. Not far from the lot Gosnell found a cow track corresponding to the track of his cow, and near the cow's tracks, and lead-

ing in the same direction, the tracks of a man wearing large overshoes. The tracks were leading away from Gosnell's premises. That same day the cow was found in the Kansas City Stock Yards, in the possession of the Campbell & Rosson Live Stock Commission Company. On the morning of the 21st of December, 1904, a man giving his name as J. Smith sold a cow to the said commission company, and received therefor a ticket, showing the weight, charges, price, etc., and a check for the purchase money. The same man appeared again with another cow, to-wit, the cow belonging to the Gosnells, on the morning of December 23, 1904, and sold her to the same company under the name of Johnson, and received a ticket and check as before. This last cow, sold by the man giving his name as Johnson, was fully identified as the cow stolen from Gosnell, and was returned to him by the commission company. A description of the man who sold the cow was given to Gosnell, and thereupon he gave the commission company the address of a man living about two miles from his place of residence. Lee Glascock, an employee of the commission company, and a deputy marshal, were sent to the residence of this man, and Glascock identified this man, the defendant herein, as the one who sold the company said cow, and thereupon defendant was arrested at his home by the deputy marshal, about four o'clock in the afternoon. When arrested, the defendant answered to the name of Walker. The testimony on the part of the State positively identified the defendant as the man who had sold the cow two days before under the name of Smith, and who had sold Gosnell's cow under the name of Johnson. When arrested, the defendant was searched, and a five dollar gold piece was found in one of his boots, and three silver dollars in the other. In the fob pocket of his pants was found the sale ticket of the cow sold the commission company on the 21st, under the name of Smith. This ticket was offered in evidence and the defendant was asked about it, but said he did not

know anything about it. The defendant offered evidence tending to show that he was at his home all night during the night of December 22, 1904, and until seven or eight o'clock on the morning of the 23rd; he also offered evidence of good character in the neighborhood in which he resided. The State in rebuttal offered evidence tending to impeach his good character for honesty and integrity.

The cause was submitted to the jury under instructions defining larceny; on the presumption arising from the recent possession of stolen property; and on the defense of alibi and reasonable doubt. Other facts will be noted as occasion may require in the examination of the errors alleged to have been committed by the criminal court.

I. Counsel for the defendant insists that at the close of the State's case, if only proper and legitimate evidence had been admitted, the court should have directed a verdict for the defendant.

Under this head, the counsel for the defendant argues at great length the insufficiency of the evidence tending to identify the defendant as the man Johnson who sold the cow to the commission company at the stock yards on the morning of the 23rd of December. Much stress is laid upon the fact that at the preliminary trial before the justice of the peace, several of the witnesses, Glascock and McReynolds, among others, only identified the defendant as Johnson from the fact that he wore felt boots, and that Gosnell was actuated by unfriendly feelings to the defendant. But, on the other hand, the witnesses on behalf of the State made out the following case: Mr. Gosnell testified to the ownership and possession of the cow, and that she was at his home on the night of the 22nd of December, 1904, in an enclosed lot; that next morning about seven or seven thirty o'clock, his cow was missing, and he found the tracks leading towards the stock yards; that he went

to the stock yards and found her there in the possession of the Campbell & Rosson Live Stock Commission Company. He testified that the tracks of the man which accompanied the cow tracks from his place appeared to have been made by large felt boots, or overshoes; that the overshoes appeared to have been of new rubber; that the impression of the rubber was plain. Indeed, the evidence left no doubt whatever that the cow found by Gosnell in the stock yards belonged to him. His evidence was fully corroborated by that of Jones, who lived with Gosnell, and closed the lot gates on the night the cow was stolen.

Mr. Hieronymus testified that he had lived in Kansas City for twenty years, and his business was that of selling hogs at the stockyards. He identified the defendant as the man who, on the 21st of December, came to the stock yards at the 12th street gate, and gave him the name of J. Smith; he had a cow to sell. Witness asked the defendant, "Who sells your cow?" and he says, "You folks." Witness then asked him his name and he said, "J. A. Smith." Thereupon the witness says, "I took his cow up to block 25, and turned her over to the cattle salesman," and said to the defendant, "I do not know how long it will be before your cow will be sold," and defendant says, "I am going out the 12th street gate, I have a horse and wagon out there." Witness testified that he was in the employment of the Campbell & Rosson Company on the 21st of December; that he had good opportunity to observe the defendant as he talked with him and walked with him; that the defendant had on a cap and felt boots with rubbers over them, had a short beard on his face at that time, and thinks he had on a duck coat. He testified that he had no doubt whatever of the defendant being the man who brought the cow to the stock yards on the 21st of December; that he made a memorandum in his book at the time.

W. H. Gott testified that he was in the employment

of the stock yards company at the 12th street gate, on the morning of December 21; asked if he knew the defendant, he answered, "I have seen him before," and that the defendant had given him his name as J. Smith; that he brought a cow there on that morning; that he made a memorandum at the time of the transaction which showed J. Smith, C. B. R., which stood for Campbell & Rosson, one cattle; that he noticed that the defendant had on a pair of rubber boots, otherwise he would not attempt to describe his dress; that it was bright day light, and he had no difficulty in observing the defendant; that he noticed particularly some spots on the defendant's face; that at first he thought it was smallpox marks, that was the first thing that directed his attention when he saw the defendant at the trial in the criminal court and identified him as the same man.

Joe Hielman testified that he was a buyer at the stock yards, and saw the defendant there on the morning of the 21st of December, and recognized him as the man who came there with a cow to sell and gave the name of Smith, and his recollection was that he had on felt boots that morning, he did not pay much attention to his other clothing. He noticed that defendant had a freckled face, and that attracted his atttention.

Mr. W. H. Thompson testified that he was the cashier and bookkeeper for the Campbell Bros. & Rosson Commission Company; he recognized the defendant; the first name he knew him under was Smith; he identified a duplicate scale ticket issued by the stock yards company of the weight of the cow that was sold by his firm on the account of J. Smith. When the cow was sold on the 21st of December, witness figured up the ticket and determined the net proceeds and gave defendant a check for the same. He delivered this check to the prisoner under the name of J. Smith that morning in the company's office, and it was paid and came back with the return vouchers from the bank. On the 23rd of December, this same man, under the name of

Johnson, brought another cow to the stock yards and his firm, sold the cow for him, and he again made out a ticket for the cow, and gave the defendant, under the name of Johnson, a check for her; that the defendant came up to the desk and inquired if we had a ticket there for his cow. At that time we did not have it; I asked him to have a seat, and "the boys would probably send it in from the yard." The defendant sat down in a chair, he then got up and went out of the office, and before his return they sent the ticket in from the yards and when he came back and asked for it again, witness figured it up and wrote a check and gave it to him. The defendant was around the office probably for a half or three quarters of an hour. Asked if he observed the defendant's face, he answered, "Yes;" asked if he noticed anything peculiar on his face, he answered he did, "I noticed he was a large man, at that time, and had kind of reddish whiskers, and probably a week's growth of whiskers on his face, and was freckled." Q. "You understood he was a colored man?" Ans. "Yes, sir, there was no question about that in my mind." Asked if defendant was that man whom he knew as Johnson, he answered, "Yes, sir, unquestionably." On cross-examination, he was asked why it was he received the cow from the defendant, and bought it from him, and issued a check to him for the money under the name of Johnson; he answered, "I remembered the man's face when he came in, and knew he had been there; at that time, under the pressure of business, I did not associate the man's face with the name of Smith when he had been there before; I did that afterwards when this thing came up; I went to investigating my records and found out that he was the same man that gave the name of Smith." He testified, also, that the defendant had on felt boots, and said that he positively identified the defendant in the justice's court.

Lee Glascock testified that he was at the office of Campbell Bros. & Rosson on the morning of the 23rd of

December, when the defendant came in and said he had a cow for Campbell Bros. & Rosson, and the defendant gave the name of Johnson. The cow was sold to Swift & Co., but Mr. Gosnell came in that day and identified the cow, and witness sent over and got the latter from Swift & Co., and got the cow out of their pens and turned her over to Mr. Gosnell. Witness testified that he next saw the defendant at his home out south of the city that afternoon. He identified the defendant Walker as the man he talked with that morning at the stock yards under the name of Johnson.

McReynolds also testified that he was working at the stock yards on the 23rd of December, 1904, and the defendant came there and gave his name as Johnson, and said he had a cow to yard for Campbell Bros. & Rosson. He had the cow tied behind a one-horse wagon, a milk cow, and he put her in the yards, and gave him an order to the commision firm to let them know that the cow was there.

The marshal testified that when he arrested the defendant that afternoon, he had on a pair of felt boots with big rubber overshoes over them; that he searched him after he brought him to jail, and found a five dollar gold piece in one of his boots, three dollars in silver in the other; in the fob pocket of the first pair of pants, he found a scale ticket of the weight of a cow, this was the scale ticket identified by the witnesses, of the sale of the cow by defendant under the name of J. Smith on the 21st of December. He was asked where he got that, and he said, "I do not know anything about that." I said, "this is a different cow and different weight from the one we are looking for." The State also proved that the cow would be cheap at $30.

In the light of all this evidence, it is plain that the court committed no error in refusing to discharge the prisoner at the close of the State's case.

II. But it is earnestly insisted by the defendant that the court erred in permitting the State to show that

defendant, under the name of J. Smith, sold another cow on the 21st of December, 1904, to the commission company; that this permitted the State to prove another and separate crime than the one with which the defendant was charged, and that under the decisions of this court in State v. Goetz, 34 Mo. 85, and State v. Spray, 174 Mo. 569, it was error to admit such proof. This, however, is a misapplication of the doctrine announced in those two cases, and many others to the same effect in this State. In the first place, there was no evidence offered tending to prove that the cow he first sold had been stolen. The purpose of the evidence offered as to the first cow and the ticket of the said sale, was to identify the defendant as the same person who had in his possession, on the 23rd of December, 1904, the cow stolen from the prosecuting witness, Gosnell. For the purpose of identification it is permissible to prove every fact connecting the defendant with the crime charged. [State v. Bailey, 190 Mo. 257; Underhill on Criminal Ev., sec. 91; Bishop's New Criminal Proc., 1129; 1 Wigmore on Evidence, sec. 414; State v. Folwell, 14 Kan. 105; Yarborough v. State, 41 Ala. 405.] It was entirely competent for the witnesses who were the employees of the Campbell & Rosson Commission Company to state when and where and under what circumstances they had seen the defendant prior to the time they were testifying in this case, and identifying him as the man from whom they had received Gosnell's cow, and for whom they had sold it to Swift & Co. This is elemental and requires no citation of the law of evidence to sustain it. The ruling of the learned criminal court is in no manner in conflict with the decision in State v. Spray, 174 Mo. 569.

III. It is next urged that the court erred in refusing to admit more evidence to establish an alibi, and in striking out the evidence of David Ingle for the defendant. There is nothing to show that any other witnesses were offered in addition to those who did testify for

the defendant to establish his alibi, and no exception whatever was saved to the striking out of the evidence of David Ingle, hence there is nothing for us to review on that point.

IV.  It is insisted that the court erred in its 4th instruction to the jury on the question of the presumption arising from the recent possession of stolen property.  The basis of this assignment is that the court in this instruction did not include in its enumeration of the evidence which the jury should consider as rebutting the presumption of guilt from the recent possession of stolen property, the evidence tending to prove an alibi. While the counsel for the defendant has not called our attention to this specific objection to this instruction, it is to be noted that the instruction in and of itself is not comprehensive enough under the decisions of this court in State v. Kelly, 73 Mo. 608; State v. Sidney, 74 Mo. 390; State v. North, 95 Mo. 615; and if the instruction stood alone and had not been supplemented by instruction numbered 6, which fully covered the defense of alibi, it could hardly stand the test of the foregoing cases, but, as we have often said, the instructions of the court must all be read and considered together.

In State v. Riney, 137 Mo. l. c. 105, it was said: "The State having shown defendant in the exclusive possession of a pair of shoes stolen from the burglarized car so recently after the goods were stolen, it was entirely proper to instruct the jury on the presumption arising from such possession, and, as the court also instructed fully upon the defense of alibi, no error resulted from not qualifying the instruction on recent possession as to the rebuttal of the presumption of guilt from recent possession by proof of an alibi, as the two instructions necessarily had that effect and must be read together." Upon the authority of that case it must be held that the court by its instruction on alibi cured the oversight in not qualifying the instruction number four as to the effect of an alibi rebutting the

presumption of guilt. We will say, however, that we think it would be much preferable for the trial court to make the instruction on recent possession broad enough to cover all the matters which the jury should consider in rebuttal of the presumption of guilt from recent possession of stolen property.

V. In his motion for new trial, counsel assigned as error certain remarks of the prosecuting attorney in his address to the jury, but as no exception was saved to the ruling of the court, that matter is not before us for review. Under the evidence and the presumptions of law, the defendant has no ground to complain of the verdict of the jury, and the judgment of the court. The judgment is affirmed.

*Burgess, P. J.,* and *Fox, J.,* concur.