## THE STATE v. WRIGHT, Appellant.

### Division Two, November 20, 1906.

LARCENY: Recent Possession: Good Character: Instruction. In a prosecution for larceny, the evidence of defendant's good character should be submitted to the jury in connection with the evidence of recent possession; a general instruction which simply gives the defendant the benefit of good character as in ordinary cases is not sufficient.

Appeal from Christian Circuit Court.—*Hon. John T. Moore*, Judge.

REVERSED AND REMANDED.

*G. A. Watson, Geo. W. Thornsberry* and *J. C. West* for appellant.

Instruction 3, on the presumption arising from recent possession of the stolen property, is too narrow and restrictive, in view of testimony of good character. State v. Bruin, 34 Mo. 541; State v. Kelley, 73 Mo. 608; State v. Sidney, 74 Mo. 390; State v. Crank, 75 Mo. 406; State v. North, 95 Mo. 615; State v. Walker, 194 Mo. 253.

*Herbert S. Hadley,* Attorney-General, and *N. T. Gentry,* Assistant Attorney-General, for the State.

The State's instructions were fair and full, and defendant has no grounds for complaint. They defined the crime of larceny, defined reasonable doubt, told the jury how to weigh the testimony of the defendant and the different witnesses, told the jury that the information was a formal charge, and also explained the value of such circumstances as the flight of the defendant, and the recent possession of stolen property. As this court has often said, "Instructions must be read and considered together." State v. Walker, 92 S. W. 662; State v. Riney, 137 Mo. 105.

BURGESS, P. J.—From a conviction of grand larceny in the circuit court of Christian county and the fixing of his punishment at two years imprisonment in the penitentiary, under an information filed by the prosecuting attorney of said county charging him with stealing certain hogs of the value of fifty dollars, the property of one Ray A. Blunt, defendant appeals.

At the time of the alleged larceny one Ray A. Blunt was the owner of nine hogs, namely, four barrows, marked with a crop in the right ear and an under half crop in the left; one black sow; one black gilt; two sows, black and white spotted; and one black barrow with white spots. The hogs were kept on Blunt's farm in Christian county, near Highlandville, and were missed on May 31, 1903. While they ran out in the public road, they came up every night to get their feed. The value of the hogs was variously stated at from thirty-five to fifty dollars. About June 1, 1903, defendant traded nine hogs to one Dick Campbell for two hogs; some of the nine were some of the hogs alleged to have been stolen. On June 26, 1903, defendant sold to Collins Brothers twelve hogs, some of which were identified as some of the hogs alleged to have been stol-

en. Collins Brothers were dealers and shippers of live stock; and Dick Campbell lived on a farm near where defendant lived. When Campbell went with defendant to look at these hogs, they were in a field about a quarter of a mile from defendant's house. When Blunt heard that hogs had been purchased by Campbell and by Collins Brothers, he went to see them, described and afterward identified the hogs as belonging to him. Blunt then instituted replevin suits and succeeded in getting these hogs; and defendant paid Mr. Collins and Mr. Campbell the value of the hogs and the costs of said suits. About the last of May, one Marion Ellingsworth saw defendant driving several hogs, which answered the description of those stolen, along the road going in the direction of defendant's home and from the direction of Blunt's home. That he had talked to defendant several times about this circumstance, but that defendant would not say much; that he seemed to be uneasy. Several witnesses testified that the hogs which Blunt replevied from Campbell and from Collins Brothers were Blunt's hogs. A witness named Phipps testified that, about a month before the alleged larceny, defendant and he were walking across George Cox's field and that thew saw Blunt's hogs in said field at that time. That defendant then said that these hogs were always in somebody's field, and that somebody ought to run them off, or somebody could kill them and it would never be known. The sheriff and constable testified that, shortly after the replevin suits, a warrant was issued for the arrest of defendant, and that they made a number of efforts to find him; that they went several times to his home and to a number of other places; stayed out all night and could not find him for about eight or ten days.

On behalf of defendant, the evidence tended to prove that he had, prior to this trouble, a good reputation for honesty. Defendant, in testifying in his own behalf, admitted having possession of these hogs, but

claimed to have purchased five of them from a man named Hull. He said that he met Hull on the road between Ozark and Highlandville; that Hull was a stranger to him; that Hull was driving these hogs along the road; and that he purchased them for $22.50, borrowing seven dollars and a half of the money from one Lincoln Hatton, who passed them. That these were some of the hogs that defendant sold to Collins Brothers about one month later. Defendant testified that he lived twelve miles from Ozark, and that he drove some hogs to that town and sold them to Collins Brothers at the stockyards. He testified that he bought a black sow and three pigs from his stepfather; and that they were the hogs that he traded to Dick Campbell, which were afterwards replevied by Blunt. Defendant claimed that he had fifteen hogs; that they got out of his pasture and wandered off a quarter of a mile towards Blunt's place; that he went after them and drove them to his home. That, in driving them home, he passed by the witness Marion Ellingsworth. Defendant denied running from the officers, and denied all knowledge of there being a warrant for his arrest. He finally admitted that he did know that there was a warrant out for him, and said that he went down to Bull creek looking for this man Hull; that Hull said he lived on Bull creek. Lincoln Hatton testified to meeting defendant and some other man on the public road, and that defendant borrowed $7.50 from him; that he noticed five or six hogs lying down in the fence corner, but paid little attention to them. That the man that defendant was talking to was a stranger, and he heard nothing said about the man's living on Bull creek. This witness was related to defendant by marriage. Defendant's stepfather testified that he sold the sow and three pigs to defendant.

In rebuttal, the State proved that Miles Sterry, the stepfather and a witness for defendant, testified at the trial of the replevin suit that he had loaned the

defendant the money to pay for these hogs. Mr. Hull did not testify.

The only points relied upon on this appeal for a reversal of the judgment are the giving of instructions numbered three and five on the part of the State, and in refusing the only instructions asked by defendant. They are as follows:

3. "The court instructs the jury that if they believe from the evidence that about the time mentioned in the information some one did unlawfully and feloniously steal said hogs mentioned in the information and that recently thereafter the same property was found in the possession of the defendant, then the law presumes that the defendant is guilty and if he fails to account for his possession of said property in a manner consistent with his innocence this presumption becomes conclusive against him."

5. "The court instructs the jury that in determining as to the guilt or innocence of the defendant you should take into account the testimony in relation to his character and should give to such testimony such weight as you deem proper, but if from all the evidence you are satisfied beyond a reasonable doubt, as defined in these instructions, that the defendant is guilty, then his previous good character, if shown, cannot acquit, justify, excuse, palliate or mitigate the offense, and you cannot acquit him merely because you may believe he has been a person of good repute."

The instruction asked by defendant and refused is as follows:

"The court instructs the jury that the recent possession of stolen property raises the presumption that the party found in possession recently after the same has been stolen is the party who stole the same, and such presumption becomes conclusive unless such presumption of recent possession is satisfactorily accounted for or explained to the reasonable satisfaction of

the jury, or unless such recent possession has been rebutted by proof of good character of the defendant.''

It is insisted by counsel for defendant that in view of the good character shown by defendant, said instructions numbered three and five are too narrow and restrictive.

It will·be observed that the testimony with respect to the good character of the defendant was entirely ignored by this instruction.

An instruction in almost the exact language was condemned by·this court in State v. Crank, 75 Mo. 406, upon the ground that it was too narrow in that it did not submit to the jury the evidence of good character in connection with that of recent possession. The instruction as an abstract proposition of law is not so objectionable but in its application to the facts of the case under consideration was misleading in its character, and may have mislead the jury.

In State v. Gray, 37 Mo. 463, it is held that the presumption arising from the recent possession of stolen property is raised, but is subject to be rebutted by character, habits and all the circumstances.

In State v. Williams, 54 Mo. 170, it was said: ''There was no error in the instruction which told the jury that the recent possession of stolen property is presumptive evidence of the guilt of the possessor. Such possession, unless explained, either by direct evidence, or attending circumstances, or the character and habits of the party with whom the property is found, or by some other mode equally satisfactory as to the innocence of the accused, will be taken as conclusive.'' [State v. Walker, 194 Mo. 253; State v. Kelly, 73 Mo. 608; State v. Sidney, 74 Mo. 390; State v. North, 95 Mo. 615.]

The instruction should have submitted to the jury the evidence of good character in connection with that of recent possession. The question then is, was this instruction cured by the fifth?

We think not. It simply gives the defendant the benefit of good character as in ordinary cases, wherein guilty possession is not involved, and therefore not as rebutting the presumption of guilt consequent upon such possession as in the case at bar.

The instruction asked by defendant presented correctly this feature of the case, and should have been given. For the errors intimated the judgment is reversed and the cause remanded.

All concur.