## THE STATE OF MISSOURI, Respondent, v. REUBEN CROOKE, Appellant.

### Kansas City Court of Appeals, February 17, 1908.

1. **LARCENY: Recent Possession: Evidence.** Possession of stolen property recently after the theft raises the presumption of guilt against the possessor, and unless explained consistently with innocence will become conclusive.

2. ——: ——: ——: **Explanation.** The above rule has no place where the other evidence shows the accused not to be guilty, and the testimony is reviewed and held to explain defendant's possession.

Appeal from Carroll County Circuit Court.—*Hon. John P. Butler,* Judge.

REVERSED.

*Busby & Busby* for appellant.

(1) The court had no more right to instruct the jury to convict the defendant unless he accounted for the possession of the property, than to convict unless he established his alibi, in other words, the court had no right to instruct the jury to ignore either of these defenses and it was as much of a misdirection to instruct the jury to ignore the evidence of alibi and convict defendant unless he accounted for the possession as it would have been to peremptorily instruct the jury to ignore the other defenses or all defenses and convict the defendant. Wills, Circumstantial Evidence, p. 87; State v. Kelley, 73 Mo. 616; State v. Sidney, 74 Mo. 391; State v. Crank, 75 Mo. 407; State v. North, 95 Mo. 617; State v. Walker, 194 Mo. 263. (2) Upon the close of the evidence in chief for the state, defendant offered in-

structions Nos. 2, 3, 4 and 5, in the nature of a demurrer, which was refused; and upon the close of all the evidence in the case, defendant offered instructions Nos. 6, 7, 8 and 9, directing verdict of acquittal, which were refused by the court. Wills, Circumstantial Evidence, p. 205; State v. Ballard, 104 Mo. 635; State v. Sidney, 74 Mo. 392; State v. Castor, 93 Mo. 250; State v. Scott, 109 Mo. 229; State v. Belcher, 136 Mo. 138; State v. Baker, 144 Mo. 327; State v. Thornton, 1 Mo. App. 92; Finkelnberg, Mo. App. Prac., p. 144; State v. Primm, 98 Mo. 372; State v. DeWitt, 191 Mo. 58; State v. Francis, 199 Mo. 694.

*John P. Benson, I. J. Jones* and *W. J. Allen* for respondent, filed no briefs.

ELLISON, J.—The defendant was charged with burglary by breaking into a barn and stealing a double set of harness, on July 5, 1906. He was convicted of petit larceny and appealed to this court.

The only evidence for the State, of any substance, was in showing that the harness was missing from the barn of the prosecuting witness in Carroll county, in the central part of the State of Missouri, and that recently thereafter it was found in defendant's possession in the interior of Kansas, about one hundred and thirty miles from Kansas City. The law is that possession of stolen property recently after the theft will raise the presumption of guilt against the possessor and unless explained consistently with innocence will become conclusive. The character of the evidence as to the harness being taken from the barn was such that it may fairly be said to tend to prove a theft by someone, and, as just said, being found in defendant's possession, an explanation devolved upon him.

The evidence for the State, with the exception just referred to, was, as we have said, of no substance. De-

fendant lived on a farm in Carroll county, six or seven miles from the prosecuting witness. In March preceding the theft he had been in Kansas and leased a ranch. He remained there until about the middle of June when he returned to his place in Missouri. In the latter part of June he went up into the neighborhood of the prosecutor and endeavored to trade for or buy a mule to match a large one he owned. He was at the farm of two or more persons, including the prosecutor, and though no trade or purchase was made, he talked about it and looked at some of the stock belonging to those persons. While at the prosecutor's he had opportunity to see the barn and the harness which was taken by someone a week or more later. He left in a covered wagon for Kansas on the evening of the 5th of July, passing through and staying all night at Lexington, Independence and Kansas City, Missouri. He also passed through Olathe, Kansas, about twenty-five miles southwest of Kansas City and stopped there two or three days, and then proceeded on to his ranch. Shortly thereafter he was arrested and he and the stolen harness were brought back to Carroll county, he coming voluntarily without a requisition.

He explained his possession of the harness by showing by himself and other witnesses that he bought or traded for them at Olathe, Kansas. Some of these witnesses were disinterested, though one was his brother.

But if we should concede that there was room to say that this explanation, of itself, was not satisfactory, still the verdict against him cannot be sustained. While it is true that recent possession of stolen property, unexplained, will become a conclusive presumption of guilt, yet that rule of law can find no place in a case where other evidence shows the accused not to be guilty. [State v. Sidney, 74 Mo. 390; State v. North, 95 Mo. 615; State v. Walker, 194 Mo. 253.] That the evidence does so show in this case we proceed to demonstrate. If

the harness found in defendant's possession was the property of the prosecuting witness and defendant stole it, he must have shipped it out into Kansas or else taken it with him. We may assume he did not ship it. It is not pretended that he did, and no evidence that he did was offered. If there had been such evidence it could, of course, have been easily obtained. That he did not take it with him was as near conclusively shown as can reasonably be asked. At Lexington he put up his team at a livery stable with a man by the name of Kelly whom he did not have as a witness on account of sickness. But at Independence he put his team up for the night at a livery stable and called upon a veterinary surgeon to look at the eye of one of his team. This doctor was at the stable the greater part of the night in attendance on a sick horse. He got up in the wagon to look at some pups of a shepherd dog defendant had. They were young and attracted his attention by whining. He saw all of the few articles which were in the wagon, described them and stated that the harness could not have been there. The liveryman at Kansas City with whom he stopped testified that being responsible for articles accompanying a wagon left in his keeping, he examined the contents and that there was no harness in it. And so the same may be said of the liveryman at Olathe, Kansas. These men were disinterested and truthful men. There is no reason for disbelieving them, and if believed it takes out of the case the only thing in it upon which to base a conviction, viz: a presumption. There was no room for mistake on the part of these witnesses, for the wagon was practically empty. In it there were the three small pups, their eyes not yet open, a small bin with some bacon in it, a jug, a can and a small quantity of feed for his horses, and the witnesses stated that if the harness had been there it could not have escaped them.

We have not had a brief for the State, but we judge

from the character of questions asked that some point was attempted against defendant on account of his starting on his trip so late in the evening, and going into camp about eleven o'clock the first night. But in the month of July that sort of travel is not uncommon. He left before sundown, saw and talked with different ones on the road and made no pretense of concealing his journey, and to go by the prosecutor's and take the harness that night would have taken him near fourteen miles out of his way.

It may be asked why, on such slight foundation, was a verdict of guilty rendered. We can only conjecture that it came from the indignation naturally aroused over the character of the defendant. He was shown to have been convicted of larceny at some prior occasion. He admitted that he had. The evidence came into the case by way of impeachment of him as a witness, and over the objection of his counsel whose brief covers that with other branches of the case, none of which need be considered in view of what we have written.

The result is that we feel compelled to reverse the judgment and discharge the defendant. All concur.