STATE v. E. W. MINCHER.

(Filed 8 October, 1919.)

1. **Indictments—Counts—Larceny—Receiving.**

   A count for larceny and one for receiving stolen goods, etc., may be joined in the same indictment.

2. **Criminal Law—Receiving—Evidence—Guilty Knowledge.**

   Upon a trial for receiving stolen goods, etc., the defendant was an overseer of convicts, and a certain trusty was permitted to spend from Saturday nights to Sunday nights away from camp; there was evidence that he stole certain property, *i. e.,* a certain watch, money, etc., and an itemized account of the articles stolen was in a newspaper to which the defendant subscribed, and the articles afterwards were found in the defendant's possession; that the number on the watch was marked out and the hands thereon changed to destroy its identity. The defendant denied knowing that the watch and money had been stolen: *Held,* the evidence was properly admitted as tending to show his guilty knowledge. *S. v. Stancill,* at this term, cited and applied.

APPEAL by defendant from *Daniels, J.,* at the April Term, 1919, of LENOIR.

The defendant appeals from a judgment pronounced upon an indictment, charging in one count larceny, and in the other receiving one gold watch, three pieces of English gold coin, and one two and a half gold piece of U. S. coin, the property of E. A. Adrey.

The State's evidence tended to show that the defendant had been for six years an overseer of the convict road force of Lenoir County. Among the other prisoners, under the control of and worked by the defendant at the convict camp of the county, was Will Gorham, who had been a

trusty for some time. About 18 or 20 December, 1918, a watch and chain were stolen from J. T. Hearne, a witness for the State. On the night of Tuesday, 28 January, 1919, several stores in the city of Kinston were broken open and goods and other articles were taken from them. On the same night the home of E. A. Adrey, a Syrian merchant of the town, was entered and about $300 in bills, gold, and checks were stolen. Among this money were three English gold pounds, one two-dollar-and-a-half gold-piece of American money, a five-dollar gold-piece, half-pound of African money, some Greek money, about the size of a quarter, a Chinese dime, and some Philippine Island money. On the next morning (Wednesday morning) the officers found a track of a man in his stocking feet, and tracked him from about the edge of town to the iron bridge and to the stockade. There they arrested Will Gorham. In consequence of what they learned from him, the latter part of March, 1919, they took out a search warrant and searched the house and premises of the defendant Mincher. This was about forty or fifty yards from the stockade. Put away in a trunk, which was locked, were three gold-pieces, the property of Adrey, and later they obtained from him, in addition to these three gold-pieces, a two-dollar-and-a-half gold-piece, also the property of Adrey. The defendant at the time was wearing the watch of Hearne attached to another chain. The hands had been changed and the number inside had been scratched out. Will Gorham was convicted at the August Term, 1918, of Lenoir County of housebreaking and was serving the sentence of five years on the roads for such offense. Adrey did not succeed in finding or recovering any of the rest of his money. It appeared further from the testimony of Rhem, superintendent of roads, that Gorham was made a trusty in the fall of 1918, and that he, Rhem, left the stockade on Saturday night and other nights. During his absence the convicts were left in charge of Mincher on Saturday and Sunday, and of John Ipock on the next. He further testified that the defendant Mincher had entire charge of the camp when he, Rhem, was absent. The defendant was a subscriber to the *Kinston Daily News* during the period when these robberies were going on, and had been for several years before. It was taken to him by a rural carrier. In the issue of that paper of 30 January, 1919, there was a full account of the robberies the preceding Tuesday night, including those of the Adrey home, and also a list of the coins stolen therefrom. There was evidence also on the part of the State that Will Gorham was permitted to leave camp nearly ever Saturday night, and would not be back until after eleven o'clock Sunday night; that Will Gorham brought money back with him on some of these trips, ten- and twenty-dollar bills, which he gave to the cook, another trusty, to keep for him; that when

he gave the two-dollar-and-a-half piece, the English pounds, and some paper money to the defendant on the road; that the defendant knew of Will's bringing to the camp a large quantity of Reyno cigarettes, as the witness overheard Mincher tell Will, "You had better get them cigarettes out of the cage; old Thad Tyndall is talking," and defendant and Will were having secret talks together, mostly every night after supper.

The defendant in his testimony admitted getting the two and one-half dollars and English pound pieces from Will some time in February, 1919. He admitted also getting the watch from Will, but claimed that he did not know that they were stolen. It appears in the testimony that defendant was in Kinston the night in which Hearne's house was robbed; this also he admits.

The defendant moved to quash the indictment upon the ground that the two counts could not be joined. Overruled, and defendant excepted.

The defendant also excepted to the admission of evidence as to the watch found in his possession, because it was shown to be the property of Hearne, and if stolen it was not at the same time when the property described in the indictment was stolen.

Also to the introduction of the *Dailey News,* containing an account of the robberies.

*Attorney-General Manning and Assistant Attorney-General Nash for the State.*

*Fred I. Sutton and T. C. Wooten for defendant.*

ALLEN, J. It has been the uniform practice in this State to join a count for larceny with one for receiving in one indictment, and this has been repeatedly approved. *S. v. Baker,* 70 N. C., 685; *S. v. Stancill,* at this term.

The evidence as to the watch and the article from the *Daily News* belong to the same class of testimony, and both were competent on the question of guilty knowledge.

The defendant admitted he received the watch as well as the property charged in the indictment from Gorham, a convict in his charge, who had no opportunity to make money, and who was in the habit of leaving camp at night, but he denied that he knew that any of the property was stolen, and this was the real question in controversy before the jury.

The number of the watch had been scratched out, the hands changed, and the defendant testified he was to pay Gorham $8 for it, while Hearne said it was worth $40.

It was also shown that the *Daily News* was delivered to him as a subscriber regularly, and that it contained an account of the stealing from the house of Adrey before the defendant received the property from

Gorham, and the defendant, testifying in his own behalf, did not deny that he knew of the newspaper article.

This evidence comes clearly within the principle of *S. v. Simons* and *S. v. Stancill,* at this term, in which the authorities are collected and discussed.

The Court says in the first of these cases: "There are offenses which are committed in sudden temper, or under violent provocation or by the impulse of passion. As to these, the only competent evidence is what took place at the time, *S. v. Norton,* 82 N. C., 630, but the crime of illicit dealing in intoxicating liquor is in the same class with larceny, counterfeiting, forgery, obtaining money under false pretenses, and burglary, which are all committed with deliberation, in defiance of law, and for the ignoble motive of making profit thereby. In all such cases it is competent to prove intent by showing matters in like nature, before or after the offense"; and in the second, in which the defendant was charged with the larceny and receiving of tobacco, the property of J. H. Little, and evidence that other tobacco, in his possession was stolen from one Wilkinson, was admitted. "The testimony as to the theft of the Wilkinson tobacco was offered merely to show the intent with which the defendants stole this tobacco, and not to prove the accusation substantively. It was sufficiently connected with the main charge to render it competent for this purpose. It was all taken to Raymond Stancill's, the common storehouse for the loot of these defendants. . . . It is said in *S. v. Murphy,* 84 N. C., 742: 'Evidence of a "collateral offense" of the same character and connected with that charged in an indictment, and tending to prove the guilty knowledge of the defendant, when that is an essential element of the crime, is admissible; therefore, on the trial of an indictment for the larceny of a hog, where the prosecutor testified that he identified the property as his in an enclosure of the defendant and demanded its delivery to him, it was held competent for the State to prove by the testimony of another witness that, at the same time and place, and in the presence of the prosecutor and defendant, such witness said that the other hog therein was his, and he then and there claimed and demanded it of defendant.' In that case the Court says, in an opinion by *Justice Ashe,* who always wrote clearly, accurately, and vigorously, and reviews the law at length: 'Wherever the question of identity or intent is involved, or where it is necessary to show a guilty knowledge on the part of the prisoner, evidence may be received of other criminal acts than those charged in the indictment,' citing and approving *Yarborough v. State,* 41 Ala., 405; *Thorp v. State,* 15 Ala., 749. The whole question is considered, and fully reviewed, in *Gray v. Cartwright,* 174 N. C., 49, where the authorities are collected. This question is fully discussed by the *Chief Justice* in *S. v. Simons,* at this term, and evidence of the kind

admitted in this case is held there to be competent to show knowledge, intent, and motive."

The other exceptions to evidence are untenable and require no discussion, and an examination of the charge shows that it is clear, accurate, full, and fair.

No error.