THE STATE EX REL. SCHOOL DISTRICT OF KANSAS CITY v. L. D. THOMPSON, State Auditor.—36 S. W. (2d) 109.

Court en Banc, March 3, 1931.

*McCune, Caldwell & Downing* for relator.

*Carl Trauernicht* and *Benjamin H. Charles, Amici Curiae.*

RAGLAND, C. J.—This is an original proceeding in mandamus brought for the purpose of compelling the State Auditor to register bonds issued by the Kansas City School District. The facts, as to which there is no controversy, are stated by relator's counsel as follows:

"At a regular meeting of the board of directors of relator held September 19, 1929, at which all the members of the board were present, the board by unanimous vote adopted a resolution reciting that in the judgment of the board it was expedient for the School District of Kansas City to borrow $5,000,000 for the purpose of purchasing sites for school houses and additional ground attached to sites for school houses already owned, and erecting school houses and building additions to, remodeling or reconstructing buildings existing at the time of making the loan and furnishing the same within the school district and issue bonds of the school district in payment therefor; and the resolution provided that a special election be held in said school district on the 19th day of October, 1929, at which there should be submitted to the qualified voters of the said school district a proposition authorizing the board of directors to borrow on behalf of the school district the sum of $5,000,000 for the purposes aforesaid, and for the payment thereof to issue bonds of the school district, said bonds to be five thousand in number, each of the denomination of $1,000, to be payable to the bearer twenty years from date or to be payable to bearer, and due serially within from one to twenty years from date, as the board of directors might determine, with interest at the rate of not exceeding five per centum per annum, payable semi-annually; and to authorize the levy and collection of an annual tax sufficient to pay the interest on all of said bonds as it falls due, and also to constitute a sinking fund for the payment of principal of all of said bonds within twenty years from their date. Notice of said election was duly and

legally given, and the election was duly and legally held on the said 19th day of October, 1929. At said election 47,920 votes were cast upon the proposition to borrow $5,000,000 for the purposes above stated, of which 42,714 votes were polled for the loan and 5,206 votes against the loan.

"On February 6, 1930, at a regular meeting of said board of directors, at which all members of the board were present, a resolution was unanimously adopted reciting that more than two-thirds of the votes cast at said election were for the loan and authorizing the borrowing of $5,000,000 on behalf of the school district for the purposes above stated, and said resolution provided that the bonds of said school district be issued for the payment of said loan should be five thousand in number, each of the denomination of $1,000, payable to bearer, and that said bonds should be issued in one or more series, each series maturing twenty years from date of that series, or serially on such dates and bearing interest at such rates, respectively, but not to exceed five per centum, payable semi-annually, as the board of directors prior to the issue thereof might determine. Said resolution set forth the form of the bonds, authorized the execution thereof, and provided that the president and secretary should present the same or any part thereof to the State Auditor and procure the registration thereof according to law. Said resolution further ordered that there be levied, assessed and collected an annual tax on all taxable property in the school district, sufficient to pay the interest on said bonds as it falls due, and also to constitute a sinking fund sufficient to pay the principal of said bonds as the same falls due and within twenty years from the date of said bonds.

"The petition herein alleges that the said loan of $5,000,000, together with all other indebtedness of said school district, does not exceed any limit prescribed by the Constitution of the State of Missouri or any statute thereof, and this allegation is admitted by the return of the respondent.

"Acting under authority of the power vested in it by the election of October 19, 1929, and in pursuance of the provisions of its own resolution of February 6, 1930, the board of directors of relator has issued and respondent has registered, and said board of directors has sold two series of bonds, each of the sum of $500,000. The first of said series was designated 'The Kansas City School District School Bonds, Series A' and consisted of 500 bonds of the par value of $1000 each, and numbered 30611 to 31110, both inclusive, and were sold pursuant to the provisions of a resolution adopted by the board of directors adopted at a meeting held on February 20, 1930. The bonds of Series A were all dated January 1, 1930, and mature serially $25,000 par value each year beginning January 1, 1931, and ending January 1, 1950. The second series was designated 'The

Kansas City School District School Bonds, Series B' and consisted of 500 bonds of the par value of $1000 each, and numbered 31111 to 31610, both inclusive, and were sold pursuant to the provisions of a resolution of the board of directors adopted at a meeting held on November 6, 1930. The bonds of Series B were all dated July 1, 1930, and mature serially, the last maturity being January 1, 1950.

"At a regular meeting of the Board of Directors of the School District held on November 20, 1930, at which all members of the board were present, a resolution was unanimously adopted declaring that in the judgment of the directors it was advisable at that time to offer for sale and sell an additional $500,000 par value of said bonds for the purposes authorized at said election, and it was resolved that there be then issued bonds numbered 31611 to 32110, both inclusive, to be designated 'The Kansas City School District School Bonds, Series C,' all dated January 1, 1931, drawing interest from date at the rate of 4¼ per cent per annum, payable semi-annually, said bonds maturing $25,000 each year beginning January 1, 1932, and ending January 1, 1951, the bonds numbered 32086 to 32110, both inclusive, falling due more than twenty years from the date when the bonds of Series A were dated and issued, to-wit, January 1, 1930. The resolution further provided that after the bonds had been issued, the president and secretary should present the same to the State Auditor and procure the registration thereof according to law.

"Pursuant to said authority and direction, the president and secretary of the board prepared and executed Bond No. 32110 of said Series C and attached thereto the corporate seal of the school district and presented said bond to the respondent for registration and tendered the fee and compensation allowed said Auditor by law and presented to the respondent a certified transcript of the proceedings of relator authorizing the issuance of said bonds, and the petition alleges that said transcript shows that all conditions of law with reference to the issuance of said bonds have been complied with, and this allegation is admitted by the return of the respondent herein.

"Respondent has refused and still refuses to register said Bond No. 32110 and this proceeding is brought for the purpose of obtaining from this court a writ of mandamus requiring and commanding the respondent to register said bond."

As disclosed by his return respondent refuses to register Bond No. 32110 on the sole ground that it will not become due until more than twenty years after January 1, 1930, the date of issuance of Series A of the bonds, in contravention, as he alleges, of Section 12 of Article X of the Constitution and Section 9529, Revised Statutes 1929. The constitutional provision referred to is as follows:

"Any county, city, town, township, school district or other political corporation or subdivision of the State, incurring any indebtedness requiring the assent of the voters as aforesaid, shall before or at the time of doing so, provide for the collection of an annual tax sufficient to pay the interest on such indebtedness as it falls due, and also to constitute a sinking fund for the payment of the principal thereof, within twenty years from the time of contracting the same."

Said Section 9529 provides:

"The loans authorized by the next preceding section shall not be contracted for a longer period than twenty years . . . Before or at the time of issuing the bonds it shall be the duty of the board of directors to provide for the collection of an annual tax sufficient to pay the interest on the bonds as it shall fall due, and also to constitute a sinking fund for the payment of the principal thereof within the time said principal shall become due."

Where bonds in a fixed amount are duly authorized by the electorate of a municipality or subdivision of the State, can the governing board or body of such municipality or subdivision of the State issue and sell the bonds so authorized in installments, from time to time, each of such installments maturing not exceeding twenty years from the date of its issuance, but some of them maturing more than twenty years from the date of the first? That generally speaking is the question involved.

It is suggested in the briefs of counsel for relator that said Section 12 of the Constitution does not require that the bonds of counties, cities, school districts and other political corporations of the State, shall be made payable within twenty years from the date of contracting the debt, but only that provision shall be made for the collection of an annual tax sufficient to pay the interest as it falls due. and also to constitute a sinking fund for the payment of the principal thereof within twenty years. What possible purpose could be subserved by requiring the accumulation of a sinking fund sufficient to discharge the principal within twenty years, if the principal could not then be paid? The implication that the debt may not be contracted for a longer period than twenty years is inescapable. This is the construction which has been universally placed upon the language of this provision of Section 12 by the Legislature since its adoption in 1875; Section 9529, quoted in part above, is itself an instance in point. State ex rel. v. Walker, 193 Mo. 693, properly considered, merely holds that, where municipal indebtedness has been *created in strict compliance with the Constitution,* the failure thereafter of the officers charged with the duty to assess, levy and collect an annual tax sufficient to constitute a sinking fund for the payment of the principal thereof when due, does not invalidate or extinguish the debt, but it may be refunded, although

the holder thereof or any taxpayer could have compelled the collection of the requisite tax.

It is further suggested in a brief by *amici curiae* that the constitutional provision in question may be considered as directory only. But the provision, when read in connection with the whole of Section 12, is so obviously intended as an express limitation on the power of municipalities to incur indebtedness in excess of their annual income and revenue that the suggestion cannot be seriously regarded.

The matter to be determined, on the facts of this case, is whether there is one debt, or whether there are separate and distinct debts. Is the authorized indebtedness of $5,000,000 *the debt*, initiated by the issuance and sale of the first installment of bonds and the indebtedness incurred on each subsequent issue and sale by relation forming a constitutent part of it? Or is each issuance and sale of bonds to be regarded as a separate and distinct transaction, so far as incurring indebtedness is concerned?

The relator after a survey of its needs adopted a comprehensive plan with respect thereto. The plan so adopted required the purchase of sites for school houses, the erection of school houses and the remodeling and reconstruction of existing buildings—the estimate cost of all of which was $5,000,000. The electorate of the school district had nothing whatever to do with the adoption of the plan, nor could it have anything to do with the execution, but its assent to the incurring of an indebtedness of $5,000,000 was necessary. This assent was duly obtained. Thereupon relator prepared to enter upon the execution of its plan to buy sites and erect school houses, and as a preliminary step borrowed $500,000 from A (whether A was a bank, bond house, or a group of individuals, is not material); shortly after the plan got under way relator borrowed another $500,000 from B; and is now about to borrow $500,000 from C. These separate borrowings do have some relation to each other in so far as relator is concerned, because effected pursuant to a single scheme or plan on its part; but with reference to the lenders they are wholly separate and distinct transactions. No lender is concerned with relator's transaction with other lenders; nor is it any concern to him whether relator proceeds with its building plan until it shall have borrowed $5,000,000, or in fact whether it has any plan at all.

The mere fact that loans, obtained at different times and from different sources, were so obtained pursuant to a single scheme or plan would seem to be without influence in determining whether they must be regarded as constituting in the aggregate a single indebtedness. For if relator after adopting its plan calling for an aggregate expenditure of $5,000,000 had secured from the electorate a separate authorization for the borrowing of each $500,000 as needed in carrying out the plan, it would scarcely be contended that each of such loans did not constitute a separate and independent

indebtedness. Nor is it apparent how one general authorization, instead of separate authorizations, could effect a change in the status of the loans with reference to their relation to each other.

Said Section 12 of the Constitution is a limitation on the taxing power. It effects such limitation by limiting the debt making power. [State ex rel. Clark County v. Hackmann, 280 Mo. 686, 702, 218 S. W. 318.] The principal limitations in that respect go to the length of time for which an indebtedness may be contracted, and the aggregate amount of indebtedness which may exist at any one time. Relator, complying with other provisions of said Section 12, may procure from time to time as many loans as it may wish, subject to these limitations: no one of them may be contracted for a longer period than twenty years, and in the aggregate, together with all other existing indebtedness, they may not exceed five per centum on the value of the taxable property in the district. Whether the loans be obtained pursuant to a single plan of public improvement under one general authorization by the electorate, or whether under different plans and separate authorizations, can have no bearing, it is obvious, on the question of whether they transgress the limitations imposed.

For the reasons appearing in the preceding paragraphs we are of the opinion that the bonds of a municipality in a fixed amount when duly authorized, may, without violating any provision of said Section 12, be issued serially and sold in installments where the bonds of each installment mature within twenty years from its date, and this regardless of whether some of the bonds are issued to mature more than twenty years from the dates of preceding installments. This view accords with the practical construction which has always been put upon said Section 12 by state and municipal authorities having to do with the issuance, registration or sale of municipal bonds. Approximately $100,000,000 of bonds have been issued by the cities, counties and school districts of the State under authority of corporate action providing for the issuance of series or installments, some of which mature more than twenty years after the date of the first series or installment. The Auditor would not have raised the question in this instance had his attention not been called to a recent decision of the Supreme Court of Iowa construing a somewhat similar constitutional provision. In the Iowa case, State v. Executive Council of State, 223 N. W. 737, the court had before it an act of the Legislature for the creation of a debt by the State of Iowa for $100,000,000 and the issuance of bonds therefor. The decision turns, as we read the case, upon the construction which the court puts upon the particular act. It is therefore without persuasive influence in the decision of the questions involved here.

Peremptory writ awarded. All concur.