STATE v. SPECIAL TAX SCHOOL DISTRICT NO. 14, OF DADE COUNTY, FLORIDA, *et al.*

161 So. 410.
Opinion Filed May 15, 1935.

*Cary D. Landis,* Attorney General, and *H. E. Carter,* Assistant, for Appellant;

*Peters & Kemp,* for Appellees.

Davis, J.—This is an appeal from a decree of the Circuit Court of Dade County validating certain bonds amounting in the aggregate to $700,000.000 proposed to be issued by the Board of Public Instruction of Dade County on behalf of Miami Beach Special Tax School District No. 14 and approving the sale of $529,000.00 of said bonds to the United States Government. The proceedings were instituted pursuant to Section 5106 C. G. L., 3296 R. G. S., *et seq.* The decree of the Circuit Court was in favor of the validity of the issuance of the bonds and the sale thereof as set up in the petition filed in the Court below by the appellees here.

The Circuit Judge found the following to be the salient facts of this controversy: (1) that Special Tax School District No. 14 of Dade County, Florida, is one and the same as Miami Beach Special Tax School District No. 14 created by Chapter 10843, Special Acts of 1925, as amended by Chapter 13100, Special Acts of 1927, and that the bonds proposed to be issued and validated are the bonds of said Miami Beach School District No. 14 of Dade County, Florida; (2) that petitioner, Special Tax School District No. 14 of Dade County, had properly proceeded in the premises to pass the resolutions essential to the issuance of the bonds here brought in controversy, and that said Special Tax School District No. 14 was duly authorized in law to issue said $700,000.00 bonds for the purposes specified in the validation petition; (3) that the issuance of the bonds had been duly approved by a majority of the votes cast in an election held in said Special Tax School District in which a majority of the freeholders who were qualified electors therein had participated, as provided by law and Amended Section 17 of Article XII of the Constitution of Florida; (4) that the bonds proposed to be issued, together with existing indebtedness, will not exceed 20% of the assessed

valuation of the taxable property of the issuing district according to the last assessment therein for State and county purposes, exclusive of exempted homestead property provided to be exempted from taxation in accordance with Section 7 of Article X of the Constitution; (5) that the bonds proposed to be issued according to their terms would become payable within thirty years from the date of issuance and that the first installment payment would fall due according to the terms of said bonds not more than three years from the date of issuance thereof; (6) that the petitioner, the Board of Public Instruction of the County of Dade, State of Florida, was authorized by law to sell $529,000.00 of said proposed bonds without at the same time selling or offering for sale the entire authorized issue of $700,000.00 which had been proposed and voted for by the freeholder electors; (7) that the fact of the last annual installment of said $529,000.00 bonds proposed to be sold by said Board maturing in 1957 is less than 3% of the total amount of $700,000.00 of bonds authorized to be issued, and is less than 3% of the total amount of bonds proposed to be sold, out of the total issue of bonds, does not invalidate said bonds, or any of them, and such fact does not violate Section 17 of Article XII of the Constitution of Florida, because the amount of each annual installment of the bonds authorized to be issued by said Board of Public Instruction resolution adopted June 20, 1934, pursuant to said bond election hereinbefore referred to, exceeds 3% of the total amount of bonds authorized to be issued; (8) that all matters, acts, conditions and things required by law to happen, exist or be performed, antecedent to, or concurrently with, the issuance of said bonds, had happened, existed, been done and performed, in due time and manner as required by law; (9) that the Board of Public Instruc-

tion of Dade County was authorized by law to accept the bid of the United States of America for said bonds subject to the terms, stipulations and provisions of the Loan and Grant Agreement mentioned in the petition filed in the cause, and upon a compliance by the said United States of America with said bid that the said Board of Public Instruction was authorized by law to deliver said bonds bid for to the United States of America as purchaser thereof.

Having made the findings and stated the conclusions of law and fact hereinbefore summarized, the Circuit Judge then entered his decree of validation, the substance of which will be found stated in the following portions thereof which are quoted from the record as it has been brought to this Court:

"IT IS THEREFORE, CONSIDERED, ORDERED, ADJUDGED AND DECREED that the said SEVEN HUNDRED THOUSAND ($700,-000.00) DOLLARS Bonds of Special Tax School District No. 14 of Dade County, Florida, particularly described as follows, to-wit:

"Numbered One (1) to Seven Hundred (700) both inclusive, in the denomination of One Thousand ($1,000.00) Dollars, bearing interest at the rate of Four (4%) per cent. per annum after date until maturity, payable semi-annually on the first days of March and September of each year upon the presentation and surrender of semi-annual interest coupons. Said Seven Hundred Thousand $700,000.00) Dollars bonds maturing annually first as follows: Twenty-four Thousand ($24,000.00) Dollars, 1935 to 1944 inclusive; Twenty-three Thousand ($23,000.00) Dollars, 1945 to 1964 inclusive; both principal and interest being payable at The Chase National Bank of the City of New York, New York City, in the State of New York, in lawful money of the

United States of America, all of said bonds being dated September 1st, 1934.

"Be and the same hereby are in all respects validated and confirmed.

"It Is Further Considered, Ordered, Adjudged and Decreed That *the sale of* Five Hundred and Twenty-nine Thousand ($529,000.00) Dollars of said bonds, particularly described as follows: Numbered One (1) to Five Hundred Twenty-nine (529) both inclusive, in the denomination of One Thousand ($1,000.00) Dollars, bearing interest at the rate of Four (4%) per cent. per annum after date until maturity, payable semi-annually on the first day of March and September each year upon the presentation and surrender of semi-annual interest coupons; maturing annually September first as follows: Twenty-four Thousand ($24,000.00) Dollars, 1935 to 1944 inclusive; Twenty-three Thousand ($23,000.00) Dollars, 1945 to 1956 inclusive; Thirteen Thousand ($13,000.00) Dollars, 1957; both principal and interest of said bonds being payable at The Chase National Bank of the City of New York, New York City, in the State of New York, in lawful money of the United States of America and all of said bonds being dated September first, 1934.

"Be and the same hereby is in all respects validated and confirmed.

"Done and Ordered in open Court at the Court House in the City of Miami, Florida, this 4th day of April, A. D. 1933.

"Paul D. Barns."
"Judge of the Circuit Court
"of the Eleventh Judicial Circuit of Florida."

Section 17 of Article XII of the Constitution, as amended in 1924, authorizes the issuance of special tax school district

bonds and then provides: "* * * Any bonds issued here-under shall become payable within thirty years from the date of issuance in annual installments which shall commence not more than three years after the date of issue. *Each annual installment shall be not less than three per cent. of the total amount of the issue."* (Emphasis supplied.)

Whether the word "issue" appearing in, and at the end, of the last quoted provision of Section 17 of Article XII of the Constitution be regarded as having reference to the total "issue" of $700,000.00 bonds *authorized* to be floated, or as having reference merely to the $529,000.00 bonds actually proposed to be sold as an "issue" under the terms of the presently appealed from validation decree, is not material to a decision of the controversy now before us. This is so, because the last annual installment of the $529,000.00 bonds proposed to be floated and sold as a severable "issue" to the United States Government, falls due in 1957, and amounts to but $13,000.00. Therefore, in any event, the last installment of the present issue must be essentially less than three per cent. of the $529,000.00 provided to be here and now negotiated, if the amount of the "issue" is computed on these bonds alone. Obviously for the same reasons it will be less than three per cent. of the $700,000.00 total authorized "issue" if the word "issue" as used in the constitutional section hereinbefore referred to, be construed as meaning the total "issue" authorized, as distinguished from a divisible "issue" proposed to be sold out of the total issue authorized.

It is the contention of the appellant in this case that Section 17 of Article XII of the Constitution, as amended, requires that each and every installment of Special Tax School District bonds, whether first, last, or intermediate of the total series authorized in the aggregate, must be so issued

and sold that not less than three per cent. of the total amount of the issue as it is actually negotiated, offered and sold will be retired each year, whether the total authorized issue be issued and sold at one time or not, and that same is a mandatory and exclusive constitutional plan of maturity as to the each separate annual installment, as well as a plan of maturity for the whole series authorized by vote of the electors. See Davis v. Dixon, 98 Fla. 87, 123 Sou. Rep. 536.

On the other hand, appellees place their insistence upon the view that while the *authorized* issue must conform to the foregoing three or more per cent. plan of annual maturity for each separate installment beginning with the first, that the primary object sought to be obtained by the issuance of such bonds as "serial" bonds is that every authorized "issue" of special tax school district bonds proposed under Section 17 of Article XII of the Constitution must be so provided for in the plan of issuance as to be discharged at all events at the end of thirty years, and that the requirement that installment payments shall be arranged for and provided to be paid annually computed upon the total amount of the issue, which installments shall begin not more than three years after the date of issue, construed in connection with the further requirement that no annual installment shall ever be less than three per cent. of the total amount of any issue, is merely a procedural requirement, which, though mandatory in character, must be regarded as yielding always to the ultimate and outstanding purpose to be served, of causing the bonds to be completely paid up at the end of thirty years, through whatever successive three per cent. annual installments other than the last one, shall be incorporated into the plan of financing adopted and set forth in

the authorizing resolution, pursuant to which any such bonds may be projected.

Our conclusion is that there may be an "issue" of bonds under Section 17 of Article XII less in amount than what the special tax school district has been authorized by law and vote of the freeholder electors to issue, and the mere fact that the *last* installment of such a limited issue of special tax school district bonds is provided to be less than three *per cent.* of the aggregate total amount of the issue, whether the total amount of the "issue" be computed on the basis of the aggregate amount of the particular block of such bonds proposed to be sold, or computed on the total amount of all such bonds that have been "authorized" to be issued, does not render invalid or unconstitutional such an issue of special tax school district bonds as hereinbefore mentioned, when such issue is otherwise projected, proposed and provided to be actually issued in strict conformity to law, and, considered by itself, is not violative of Section 17 of Article XII of the Constitution, as amended. Such was the holding of the Circuit Judge in the court below and such is our holding in affirming the decision and decree appealed from in this case.

The mere possession of artistically engraved bonds containing promises to repay money borrowed by subordinate political subdivisions of the State, affords the purchaser, holder or possessor thereof little or no satisfaction, unless the promise to pay therein contained are coupled with some enforceable covenant, by which may be realized the prompt payment of promised interest as it accrues from time to time, with the assured certainty of the liquidation of the debt istelf at its maturity if the course of financing provided for under law at the time the bonds were issued is duly observed and carried out by the obligor.

The effect of Section 17 of Article XII of the Constitution is to limit the issuance of bonds by Special Tax School Districts in this State to that class of public securities known as "Serial" bonds, as distinguished from general bonds whose payment is provided for through sinking funds required to be established and kept as means of assuring payment of same at maturity.

The theory of the Constitution and laws by which "serial" bonds are required to be employed as the form of negotiable security to be issued when the public credit is resorted to for the purpose of raising funds to accomplish object of a depreciative character, such as the building of schools and the like, is best set forth in the following quotations of the law on that subject as summarized in Abbot on Public Securities, pages 702-704, paragraph 336, as follows:

"* * * It can be fairly stated as an axiom that the State, speaking generally of an organized government is not a creator of wealth, is not a producer in the economic sense of that term. Its principal source of revenue, if not its sole source, in nearly all instances, is the exercise of the taxing power. Whatever disbursements are made or debts incurred become ultimately and directly or indirectly a burden upon and an obligation of the worker and property owner; a tax upon individual industry and thrift. A government has no mysterious and inexhaustible fund which can be drawn upon indefinitely for its expenditures. The proper functions of a state are to regulate and govern, and based upon sound reasons it is neither desirable nor legal that it engage in undertakings or transact that business which naturally and properly should be left to private enterprise. The fundamental powers of a state are limited to establishing and safeguarding political and industrial equity and equality between its citizens or groups of citizens who are

created legal persons by its authority. It cannot be the object or purpose of an organized state to supplant private and individual enterprise, thrift and industry, or personal care and responsibility. A serious consequence of public waste, extravagance and debt is the diversion of private capital and savings from private, productive enterprises to governmental non-productive uses. The prompt payment of public obligations releases for the economic upbuilding of a country its private capital. The constant diversion of a nation's wealth which should be used in private productive enterprise for its advancement * * *, to unlicensed, unnecessary and unwarranted governmental activities and extravagances will surely lead, since a violation of fundamental economic laws which cannot be permanently defeated in their operation, to the demoralization and impoverishment of the people. * * *

"In the case of subordinate civil subdivisions especially an economic argument for the repayment of the principal of the debt applies, for in most instances local indebtedness is created for the construction of works of public improvement, sewers, street improvements, water works, lighting plants, and the like which are subject to depreciation and which require ultimate replacement. To neglect in such cases to repay the principal of the debt within a reasonable time would be to confront a situation in the future where the utility of the property had vanished and the debt charge had become a burden holding the community in mortmain. * * *

"In a number of states constitutional provisions have been adopted which prohibit the issue of bonds either in general or for special purposes to run in excess of the number of years therein specified, generally a limited term.

. "In other cases the point has been covered by provisions

to the same effect in general statutes or special laws conferring authority to issue securities. And the general proposition that posterity should not be burdened with debt incurred for present comforts and, perhaps, extravagances, is recognized by provisions commonly found at the present time in grants of authority for the issue of so-called serial bonds. These may either take the form of an issue, a portion of which is payable annually, or the bonds or a portion of them may be callable at the option of the maker after the lapse of a designated period less than the date of the maturity of the issue. * * *"

The construction the lower court has placed upon Section 17 of Article XIII, which construction we have approved, fully coincides with the obvious intent of the framers of the constitutional amendment to Section 17 of Article XII, as ratified in 1924. This is so, because it carries out the constitutional mandate that (1) the total debt must be fully discharged within 30 years; (2) it must be discharged in successive annual installments during that period; (3) the annual installments must begin not more than three years after the date of the issue of the bonds; (4) no annual installment is ever to be less than three per cent. of the total issue, except the last installment, which such last installment (from the necessity of the case) may be made less than three per cent. of an actual issue in situations where not as much as three per cent. of the debt would remain unpaid at the time when the last installment is reached for payment.

Under Section 17 of Article XII of the Constitution as it now exists, the Legislature may provide for special tax school districts to issue serial bonds for the exclusive use of the public free schools within the special tax school district issuing same. To accomplish the issuance of special tax school district bonds under this section of the Consti-

tution it is essential that the issuance thereof by special tax school districts be "provided for" by some legislative act, because the constitutional section just referred to is not self-executing in its terms.

But any Act of the Legislature to "provide for" special tax school districts to issue bonds can only become operative in a particular district "whenever a majority of the qualified electors thereof who are freeholders shall vote in favor of the issuance of said bonds," and in addition thereto, cannot become operative to create any indebtedness of such special tax school district exceeding, together with the existing indebtedness of the issuing district, twenty per cent. of the assessed value of the taxable property of such district according to the last assessment for state and county purposes prior to the issuing of the particular bonds.

We have found no direct requirement in the Constitution that whenever an issue of special tax school district bonds has been duly authorized by statute passed pursuant to Section 17 of Article XII of the Constitution, and thereafter approved by the freeholder electors in accordance with the organic requirements of such section, that the total of the *authorized* special tax school district bonds that have been approved for issuance, shall be issued and sold as an entire issue or not at all.   It therefore appears to us that matters of this kind are the appropriate subject of legislative control, and that absent any statute forbidding the practice,* that the County Board of Public Instruction may divisibly exercise its authority to issue and negotiate authorized special tax school district bonds, provided it do so in such a manner as to carry out the constitutional mandate that the total issue of any such bonds voted by the taxpayers, and *authorized* to be issued, shall be made payable within thirty years

---

*No such statute has been found to exist at the present time.

from date of the first issuance of bonds under the authority conferred, and provided that each annual installment of the authorized bonds, payable according to the terms of the bonds authorized, is in excess of three per cent. of the total amount of the issue, and the first installment of the series authorized is payable not more than three years from date of the first series issued under the projected authorized series.

There is therefore no merit in the contention of appellant that the $529,000.00 bonds proposed to be sold as a single issue to the government out of the total authorized amount of $700,000.00 voted by the electors of the special tax school district, are rendered defective or invalid merely because under the terms of such divisible issue out of the total authorized, the purchaser is delivered and sold only thirteen of the maturities of 1957, amounting to $13,000.00, which last stated amount is both less than three per cent. of the amount of bonds sold as well as less than three per cent. of the total authorized issue.

The plan of issuance and retirement of special tax school district bonds set up in the authorizing resolution, not the plan of any proposed restricted issue and sale of such special tax school district bonds less than the total authorized, affords the criterion by which the constitutionality and validity of a proposed partial issue of otherwise constitutionally voted for and authorized special tax school district bonds is to be judged.

This Court has examined each separately stated adjudication of law and fact set forth in the final decree appealed from in this case, and upon consideration and review thereof, is of the opinion that the same should be affirmed in manner and form as entered, and such will be our judgment.

It is therefore considered, adjudged, and decreed by this

Court that the validation decree in manner and form as entered and appealed from be, and the same is hereby, affirmed, and that mandate in conformity with this judgment do issue within ten days as provided for by Section 5108, Comp. Gen. Laws, *supra,* Chapter 11854, Acts of 1927, if no petition for rehearing has been filed within that period.

Affirmed.

WHITFIELD, C. J., and ELLIS, TERRELL and BUFORD, J. J., concur.