(No. 6268.  September 7, 1935.)

EARL Q. MARSING, Appellant, v. GEM IRRIGATION DISTRICT, a Public Corporation, and I. H. LINE-BERGER, E. B. SNELL, ELGY ANDRUS, E. N. FULWYLER and OSCAR FIFER, as the Board of Directors of Said GEM IRRIGATION DISTRICT, Respondents.

[48 Pac. (2d) 1099.]

Laurence N. Smith, for Appellant.

Maurice H. Greene and R. B. Scatterday, for Respondents.

Richards & Haga, *Amici Curiae.*

GIVENS, C. J.—Appellant, as an elector and taxpayer within and of respondent Irrigation District, instituted this action to restrain the District and its Board of Directors from issuing its refunding bonds under the authority of chapter 39, Session Laws 1935, page 67, amending I. C. A., sec. 42–610, contending that such bonds had not been authorized by a vote of two-thirds of the qualified electors of the District, and that the statute permitting their due date to be extended for forty years violated sec. 3, article 8 of the Idaho Constitution.

No question is raised as to the legality or constitutionality of the original bonds sought to be refunded herein, or that the indebtedness because not having been retired within twenty years is now illegal or void, but impliedly concedes it may be renewed for twenty years.

■  The sole point now urged is that an irrigation district is a "subdivision of the state" within the meaning of sec. 3, article 8, and repayment of the refunded indebtedness must therefore be limited to twenty years. It has heretofore been held by a long line of authorities that the issuance of refunding bonds is not the "incurring" of any indebtedness or liability exceeding the current year's revenue within the purview of sec. 3, article 8 of the Constitution. (*Butler v. City of Lewiston*, 11 Ida. 393, 83 Pac. 234; *Veatch v. City of Moscow*, 18 Ida. 313, 109 Pac. 722, 21 Ann. Cas. 1332; *Hickey v. City of Nampa*, 22 Ida. 41, 124 Pac. 280; *Sebern v. Cobb*, 41 Ida. 386, 238 Pac. 1023; *Lloyd Corporation v. Bannock County*, 53 Ida. 478, 25 Pac. (2d) 217. See, also, *Hotchkiss v. Marion*, 12 Mont. 218, 29 Pac. 821; McQuillin, Municipal Corporations, 2d ed., sec. 2385, and Dillon, Municipal Corporations, 5th ed., sec. 939.)

Appellant argues that the twenty-year provision must apply to refunding bonds the same as to the original indebtedness because otherwise the twenty-year provision is evaded. It is not evaded; it simply does not apply because the Constitution does not so specify. The premise or condition precedent which brings into effect the necessity of an election and provision for retirement within twenty years is that the indebtedness shall exceed in the year incurred the income and revenue provided for that year. As already indicated the above authorities have held that a refunding bond does not bring about such a condition, and therefore since the election requirement does not obtain, neither does the twenty-year requirement as no distinction is made between the two. It is not every indebtedness that must be retired within twenty years, only that which increases the debt of the organizations mentioned, and refunding bonds do not increase the debt but merely continue the obligations theretofore issued.

Conceding, therefore, without deciding that an irrigation district is a "subdivision of the state," the twenty-year limitation does not apply to refunding bonds, which appellant expressly alleges the obligations herein sought to be

restrained are, and with which alone chapter 39, *supra,* deals.

Judgment affirmed.

Costs to respondent.

Budge, Morgan and Holden, JJ., concur.

AILSHIE, J., Concurring.—This proceeding calls in question the constitutionality of that portion of sec. 42–610, I. C. A., as amended by chap. 39 of the 1935 Sess. Laws, wherein it is provided that refunding bonds may be issued maturing in a period not exceeding forty years from date of issue. Sec. 3, art. 8 of the Constitution, provides as follows:

"No county, city, town, township, board of education, or school district, or other subdivision of the state, shall incur any indebtedness, or liability, in any manner, or for any purpose, exceeding in that year, the income and revenue provided for it for such year, without the assent of two-thirds of the qualified electors thereof voting at an election to be held for that purpose, nor unless, before or at the time of incurring such indebtedness, provision shall be made for the collection of an annual tax sufficient to pay the interest on such indebtedness as it falls due, and also to constitute a sinking fund for the payment of the principal thereof, within twenty years from the time of contracting the same. Any indebtedness or liability incurred contrary to this provision shall be void: provided, that this section shall not be construed to apply to the ordinary and necessary expenses authorized by the general laws of the state."

The rule is well settled (see cases cited by the Chief Justice) that the issuance of refunding bonds need not be submitted to a vote of the people. The reason for this is obvious: the original indebtedness having already been voted upon by the taxpayers and by them sanctioned and approved, it is not necessary—and indeed would not be proper—after the indebtedness has actually been incurred and the bonds sold, to again submit the same question to a popular vote.

It is the opinion of the writer that the only serious question involved here is whether a bond issue regularly voted and floated may be allowed to run more than the constitutional period of twenty years (and until past due) and thereafter be refunded for a period of thirty or forty years as authorized by chap. 39 of the 1935 Sess. Laws. The fact, that the original indebtedness has been authorized by a vote of the people and that the bonds were regularly issued, does not in itself answer the inquiry as to whether or not the *time limit* for maturity prescribed by the Constitution does or does not apply to the renewal or refunding obligation.

The primary purpose of the framers of the Constitution in the adoption of the section above set out was to require the political subdivisions of the state enumerated to do business on a cash basis, and to avoid reckless expenditures and improvident bond issues. (2 Proceedings, Const. Convention, 584, 597.) It was therefore provided, in order to incur any indebtedness other than for "ordinary and necessary expenses," that the specific question of incurring such extraordinary indebtedness should be submitted to the qualified electors and receive assent by a two-thirds vote. The framers also, in order to require these political subdivisions to continue on a cash basis, provided that "before or at the time of incurring such indebtedness, provision shall be made for the collection of an annual tax sufficient to pay the interest on such indebtedness as it falls due, and also to constitute a sinking fund for the payment of the principal thereof, within 20 years from the time of contracting the same." These provisions are mandatory. In order for the bond issue to become a legal obligation against the subdivision issuing it, the approval of a two-thirds vote of the electors must be had and provision must be made for the payment of interest and principal within the twenty-year period. These things were all done in the case at bar upon the making of the original bond issue.

The constitutional requirement contemplates, of course, that the officers of the political subdivision issuing the bonds will annually make the required levy and will collect the tax for the purpose of defraying the interest and principal

of such bond issue. If they fail to do so any elector of the district or any holder of a bond has an appropriate remedy to compel the officials to discharge their duty. If, however, no one sees fit to take such action and the officers fail to levy and collect the required tax and the debt is consequently not paid within the twenty years, these circumstances *do not discharge the indebtedness* or relieve the political subdivision incurring the same from further liability. The bondholders would have their action for judgment against the district and after judgment would still have their appropriate remedy to compel a levy or levies to pay the judgment. Nothing contained in sec. 3, art. 8, *supra*, would in any way militate against such action, on the part of a bondholder creditor or creditors. The indebtedness having been regularly incurred and not having been paid at the time and in the manner contemplated and commanded by the provisions of the Constitution, and the subsequent action of the political subdivisions issuing the bonds, the *quaere* arises as to whether or not any valid reason exists against the legislature authorizing the refunding of such indebtedness for any period of time it might see fit to fix, whatever that may be.

The framers of the Constitution were men of affairs and were not unmindful of the fact that municipal corporations, and political subdivisions often neglected to make sufficient levies to meet their bonded indebtedness and that it frequently happened that what appeared to be ample levies would not all be paid and that there would from time to time be deficits in both the interest and the sinking funds. With this knowledge, however, they simply contented themselves with commanding that provision should be made for paying all such indebtedness within a period of twenty years from the time of contracting the debt and refused to anticipate that the various political subdivisions would not comply with the constitutional provisions and were evidently willing to trust to the subsequent action of the legislature in dealing with any such contingencies as might arise and not covered by the constitutional mandate.

The Constitution of Illinois of 1870 contained a provision very similar to sec. 3, art. 8, *supra*. The City of Charleston

had negotiated a $40,000 bond issue and only paid $20,000 within the twenty-year period provided by the Constitution. The city sought to refund the unpaid $20,000 by issuance of refunding bonds to fall due within the period of twenty years from the date of the issuance of the funding bonds. In passing upon the question of the time limit in *Kane v. Charleston*, 161 Ill. 179, 43 N. E. 611, 612, the court said:

"It is not pretended that a municipal indebtedness, otherwise legally incurred, ceases to be valid and binding against the municipality upon the expiration of 20 years from the date of its being contracted. On the contrary, it is conceded that the obligation of the city to pay the $20,000 outstanding bonds still exists, and that it can be compelled to pay the same in full, notwithstanding more than 20 years have intervened since their issue. Conceding this to be true, it must also be admitted that if the holders of those bonds should take no steps to compel their payment, and the city should not voluntarily, by some means, liquidate the same, they would continue to be binding obligations upon the municipality, and it could be compelled to pay them at any time within the statutory period of limitation. It cannot therefore be said that the constitution 'puts a limit upon the duration of all municipal indebtedness,' or that it requires absolutely all such indebtedness to be paid within 20 years.

. . . . . . . . . . . .

"Does the language of the constitution which requires the municipal authorities to provide for the collection of a tax sufficient to pay the interest on bonds issued, 'and also to pay and discharge the principal thereof within twenty years from the time of contracting the same,' amount to a limitation upon the power of the legislature to empower such authorities to refund the indebtedness by issuing other bonds at the expiration of the first period? There is no ground for claiming that this language of the constitution is an express limitation upon such power of the legislature, and, if held to be such at all, it can only be done by construction or implication. That the language is not mandatory to the extent of affecting the validity of the indebtedness is clear

from what we have already said; that is to say, the mere fact that municipal authorities may fail to levy and collect a sufficient tax to pay the interest and principal within 20 years does not affect the validity or binding force of the indebtedness.''

This case was followed and approved by the same court in *People v. Atchison, T. & S. F. Ry. Co.*, 356 Ill. 251, 190 N. E. 362.

The Missouri Constitution contains the same limitation and a similar issue arose in *State v. Walker*, 194 Mo. 253, 92 S. W. 659. The Supreme Court quoted at length from *Kane v. City of Charleston, supra,* and approved and followed the rule there announced. The foregoing case (*State v. Walker*) was followed by the same court in *State v. Thompson,* 327 Mo. 144, 36 S. W. (2d) 109.

In *Davis v. Dixon,* 98 Fla. 87, 123 So. 536, the Supreme Court of Florida had under consideration a constitutional provision of that state very similar to ours, with the exception that the Florida Constitution contained limitations with reference to maturities of bonds serially which are not found in our Constitution. The court there reached a conclusion contrary to the conclusions reached by the Illinois and Missouri cases above cited. In doing so the Florida court pointed out what it conceived to have been the impelling reasons for the conclusion reached in those cases and its analysis of the reasons is both interesting and illuminating.

The Davis-Dixon case was cited by the same court with its approval in *State ex rel. Sherrill v. Milam,* 113 Fla. 491, 153 So. 100, 125, 136; it is also cited with approval in *State v. Special Tax School Dist. No. 14, etc.,* 119 Fla. 352, 161 So. 410.

In *State ex rel. Fletcher v. Ex. Council of State,* 207 Iowa, 923, 223 N. W. 737, the Supreme Court of Iowa, in construing a somewhat similar constitutional restriction, reached a conclusion similar to that reached by the Florida court and contrary to the holding of the Illinois and Missouri cases; though the Iowa court did not refer to or consider the Illinois cases and the Florida case (*supra*) had not then been decided.

My examination of the question involved and the cases pertinent impels me, though somewhat reluctantly, to conclude that there is no constitutional prohibition against the legislative act under consideration and that chap. 39 of the 1935 Sess. Laws, amending sec. 42–610, I. C. A., allowing funding bonds to be issued for 40 years, is not in conflict with sec. 3, art. 8, of the Constitution. While the Constitution commands that certain things be done in order to create a valid, legal bonded indebtedness, *it does not place any time limit on the duration of the indebtedness* after once created.

Budge and Holden, JJ., concur.