Zimmerman, J.
 

 Relator’s refunding project is proposed and has been framed in accordance with Section 2293-6, General Code (112 Ohio Laws, 366; 116 Ohio Laws, Pt. 2, —), now reading as follows:
 

 “A subdivision may issue bonds subject to call or redemption prior to maturity at not more than par. When a subdivision has issued bonds subject to call or redemption prior to maturity, the taxing authority, without the consent of the tax commission of Ohio, shall have power to refund such bonds at a lower rate of interest than is provided therein, provided that the bonds issued shall not exceed in amount the bonds refunded and the maturity of the bonds so issued shall not extend beyond the maturity of the bonds refunded. The interest and retirement levies thereon shall have the same status with respect to the limitations imposed by Article XII, Section 11 of the Constitution as the interest, sinking fund and retirement levies of the indebtedness which is retired, and shall also have the same status with respect to all limitations of the net indebtedness of the subdivision.”
 

 If that section and relator’s proceedings thereunder are constitutional, the demurrer to the petition should be overruled.
 

 In support of his demurrer, respondent suggests that the issuance of the refunding bonds constitutes the incurring or renewal of a bonded indebtedness
 
 *236
 
 within the purview of Section 11, Article XII, of the Constitution of Ohio, which requires the annual levy and collection of taxes in “an amount sufficient to pay the interest on said bonds, and to provide a sinking fund for their final redemption at maturity, ’ ’ and that since such levy will exceed the ten-mill limitation fixed by Section 2, Article XII, of the Constitution of Ohio, relator is proscribed from proceeding with the undertaking.
 

 The last mentioned section of the Constitution was adopted at the general election on November 7, 1933, and became effective January 1,1934. So much thereof as is pertinent reads:
 

 “No property, taxed according to value, shall be so taxed in excess of one per cent of its true value in money for all state and local purposes, but laws may be passed authorizing additional taxes to be levied outside of such limitation * * * when approved by at least a majority of the electors of the taxing district voting on such proposition * *
 

 However, the schedule attached to such constitutional amendment, and approved at the same time, specifically exempted from the ten-mill taxing limitation “All levies for interest and sinking fund or retirement of bonds issued or authorized” prior to January 1, 1934, and which were not subject to the former constitutional tax limitation of fifteen mills, and “All tax levies authorized prior to said date by vote of the electors of any political subdivision of the state, pursuant to laws in force at the time of such vote, to be made for or during a period of years extending beyond January 1, 1934, which levies” were outside the previous fifteen-mill limitation.
 

 Respondent concedes in his brief that ‘ ‘ The tax levy for the existing bonds is outside the ten-mill limitation established by Section 2 of Article XII of the constitution of Ohio, by reason of an election held in the year 1920 under the so-called Gardner Bill, (108 Ohio
 
 *237
 
 Laws, Pt. 2, p. 1199), and by reason of the exemptions in said Section 2 of Article XII, as amended in 1929 and 1933.”
 

 Now, if the $600,000 indebtedness represented by the bonds originally issued by relator was exempted from all tax limitations on account of the election in 1920, are we required to hold under the conditions presented that such exemption is annulled by the substitution of refunding bonds for those initially issued?
 

 It stands to reason that bonds are not'the debt itself, but simply the legal evidence thereof.
 
 State
 
 v.
 
 City of Okeechobee,
 
 99 Fla., 617, 127 So., 339. And the authorities are seemingly in agreement that no new indebtedness is incurred or created by refunding an existing indebtedness. 6 McQuillin on Municipal Corporations (2 Ed.), 43, Section 2385;
 
 State
 
 v.
 
 City of Okeechobee, supra; Keeney
 
 v.
 
 Kanawha County Court,
 
 115 W. Va., 243, 175 S. E., 60 ;
 
 Commonwealth, ex rel. Keller et al., County Commissioners,
 
 v.
 
 Cannon, County Controller,
 
 308 Pa., 321, 162 A., 277;
 
 Bolich, Jr.,
 
 v.
 
 City of Winston-Salem,
 
 202 N. C., 786, 164 S. E., 361;
 
 Marsing
 
 v.
 
 Gem. Irr. Dist.,
 
 — Idaho, —, 48 P. (2d), 1099;
 
 In re Chicago, R. I. & P. Ry. Co.,
 
 143 Okl., 170, 287 P., 1023.
 

 In the instant case it is important to remember that we are dealing with the same indebtedness created in 1916, with no increase or extension thereof. The original debt will remain intact, except for reduction, and the contemplated procedure is the placing of the evidence of the indebtedness in a form that will inure to the benefit of the taxpayers for whose relief Section 2, Article XII, of the Constitution was adopted. Since the indebtedness represented by the original bonds was legally placed outside of tax limitations in 1920, where would lie the necessity or even the propriety of re-submitting to vote a proposition that has already had favorable action?
 
 Marsing
 
 v.
 
 Gem. Irr. Dist., supra.
 

 
 *238
 
 Nor do we think Section 11, Article XII, of the Constitution, adopted in 1912, is in any wise prohibitive of the proposed refunding plan. That section provides :
 

 “No bonded indebtedness of the state, or any political sub-divisions thereof, shall be incurred or renewed, unless, in the legislation under which such indebtedness is incurred or renewed, provision is made for levying and collecting annually by taxation an amount sufficient to pay the interest on .said bonds, and to provide a sinking fund for their final redemption at maturity.”
 

 Here, the indebtedness was “incurred” in 1916, with the requisite pledge for the annual levy and collection of taxes to pay the same, and the term “renewed,” as employed in the above section, should be accorded no greater significance than the extension or re-creation of an existing indebtedness beyond the time set for its payment. Relator’s present refunding proposal is neither the incurring nor renewal of a bonded indebtedness.
 

 If there was no real necessity to include in the resolution of May 6, 1936, a provision for the annual levy and collection of taxes, etc., as to the refunding bonds, because of that binding and continuous obligation in relation to the indebtedness when created, which would attach to whatever bond-form the indebtedness might take within limits originally approved, the iteration is in line with Section 2293-6, General Code, and affords commendable assurance to the prospective purchasers and holders of the refunding bonds.
 

 No claim can validly be made that the holders of the original bonds will suffer any wrong or injustice, for they took them upon the condition of optional redemption. Impairment of contract obligations, therefore, does not become a factor to be considered.
 

 Our conclusion is that no part of the Constitution of Ohio can fairly be said to have been designed or in
 
 *239
 
 tended to thwart or impede a salutary arrangement as represented by the relator’s refunding plan.
 

 We therefore hold Section 2293-6 of the General Code to be constitutional, and relator’s petition disclosing a project and a course of action clearly within its authorization, the demurrer will be overruled.
 

 There is no conflict between our present holding and the holdings in
 
 State, ex rel. City of Portsmouth,
 
 v.
 
 Kountz, Mayor,
 
 129 Ohio St., 272, 194 N. E., 869, 97 A. L. R., 1099, and
 
 State, ex rel. Industrial Commission,
 
 v.
 
 Steel, Mayor,
 
 130 Ohio St., 90, 196 N. E., 782. The dissimilarity of the questions decided will be readily discernible upon comparison.
 

 It appearing that respondent does not desire to make further contest of this case, the writ as prayed for is allowed.
 

 Writ allowed.
 

 Weygandt, C. J., Stephenson, Williams, Jones, Matthias and Day, JJ., concur.